[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The plaintiff seeks to recover for property damage and personal injuries sustained as a result of an accident on September 28, 1990. On that date between 10 A.M. and 11 A.M., the plaintiff was travelling south on Interstate 95 when she struck a depression in the highway, causing her to strike her head on the roof of her vehicle. The vehicle blew two tires, a wheel rim was damaged and some body damage occurred. She subsequently sought medical treatment.
The sole defendant in this case was a sub-contractor employed by a general contractor. This general contractor was hired by the state to perform excavation and re-pavement work on several expansion joints in the southbound travel lanes of I-95. This particular work was performed by the defendant on the area in question on the night before the accident. However, when the general contractor failed to provide a sufficient supply of the required paving material, the defendant concluded the work by using "cold patch." This is a material used as a temporary patch, usually in cold weather when the hot bituminous patch is not being manufactured. It does not stand up under heavy vehicular traffic, and in this instance was soon disturbed and scattered about, leaving the depression the plaintiff and several other vehicles encountered.
DISCUSSION
 I
The issue of liability has been contested by the defendant, arguing primarily that the defendant was not in control of the highway but that the state was in control from the time DeVito finished its work and re-opened the travel lanes at about 5:45 CT Page 6435 A.M. to the time of the accident.
As the court sees this dispute, control is not really the issue. Even with control in the state, negligence by a third party can be the supervening cause of the injury. After hearing the testimony of Mr. Jeffry Mordino, an engineer employed by the state, the court is convinced that the work done by this defendant was defective and it knew or should have known that it was removing its signs and opening the lane in spite of a defectively patched area. At that time, the defendant could have reported the problem to the state inspector in charge, kept the lane closed pending advice, and/or contacted the general contractor. (It should be noted that if the defendant felt the general contractor was at fault for not sending a sufficient supply of the proper material, it could have joined it as a party defendant.)
The defendant's argument that the state took control at 5:45 A.M. and became responsible for the occurrences between 10 and 11 A.M. is flawed in still another respect. Mr. Mordino described the steps taken by him upon learning of the defective work. This included ordering the general contractor to take immediate remedial action. That work was done between 11 A.M. and 12:30 P.M. on September 28, 1990.
Whether this work was completed in a reasonable time under all the circumstances cannot be addressed by the court because no evidence was presented to indicate that the state or the general contractor or both took an unreasonable amount of time to correct the defective condition. The court does know it would require a work crew, equipment, signs, material and probably state police participation to re-close the road and repair the defect. What that entails in terms of time is unknown in this case.
As for the defendant's claim that this defendant was not shown to have "controlled and maintained" the work area, the testimony of Mr. Mordino makes it clear that DeVito employees were on the site, had been working, were removing signs and re-opening the closed lanes.
It is the conclusion of the court that the plaintiff has proven liability on the part of the named defendant.
II CT Page 6436
In obtaining a fair and reasonable award for the personal injuries allegedly sustained by the plaintiff, the court is confronted with a confusing array of facts and probabilities. This situation results in part from the fact that the plaintiff experienced other traumatic episodes including a fall when someone pulled a chair out from under her, a slip and fall, and a sudden freak episode as she bent over to tie a shoe lace. There is also evidence of pre-existing problems — a complaint of "neck strain" on March 15, 1990, six months before the accident. A complaint of lumbar-sacral sprain in March of 1981 was attributed to a racquetball game.
The course of chiropractic treatment undergone by this plaintiff is one of the longest, and most intensive and most expensive this court has encountered, over $9,500.00. About $3000 of this was conceded to be unrelated to this accident. In at least one of her medical reports, there is a suggestion that she should lose some weight in view of her complaints.
The doctor who subsequently assessed the plaintiff's permanent injury claims referred her for an MRI in August of 1990, prior to the accident.
Finally, the court does not find that the various injuries, conditions and complaints were not so addressed by the plaintiff's evidence as to properly address the pre-existing problems and the role of the various traumatic episodes. The claimed permanent disabilities, 10 percent of the cervical spine and 5 percent of the lumbar spine, were presented only in a medical report without testimony. The defendant's medical witness cast serious doubt on these evaluations.
It is therefore the conclusion of the court that an award of $15,000.00 represents fair and reasonable damages for her injuries. She is also awarded $1350 for the property damages to her car.
The plaintiff did not sustain her burden of proof as to any lost income or earning capacity, nor on the count claiming nuisance.
Judgment may enter for the plaintiff to recover of the defendant the total sum of $16,350.00, plus taxable costs.
Anthony V. DeMayo CT Page 6437 Judge Trial Referee